Mr. Rathesher. Thank you, Your Honor. May it please the Court, the claims here are directed to in vitro cell cultures of embryonic stem cells, not to methods of isolating embryonic stem cells, not to methods of maintaining them, not for methods of use, just to in vitro human embryonic stem cells. Stop. Do you have standing to be here? I was afraid you'd ask that. I have the feeling that'll be an important subject. Yes, Your Honor, we do have standing here. Keep in mind two things I'd like to start off with on the issue of standing. First of all, the purpose of standing is to make sure that the courts don't impede on the other branches of government. So when you have a statute that's been passed by Congress and signed by the President, that starts off to alleviate our concerns about the courts overreaching their standing. The second point I want to make sure we keep in mind is that this isn't a dispute between my client and WRF. Noticeably absent here is the Patent Office. That's who we have a dispute with. That's who our case is with. Did you suffer an injury? What is it? I read your brief. I saw no reference to an injury that you suffered. So the Supreme Court has said over and over again in Lujan, in Aikens, in other cases that while there may not be injury in certain circumstances, such as to bring a declaratory judgment act against a patent owner, there can be an injury that's created by Congress. So when Congress passes a statute that gives you the right to do something, that creates a right in you, just like Congress created the Patent Act. So your view is the Supreme Court law says when Congress has created a statutory right, you automatically overcome any barriers towards Article III standing at the appellate court? Is that your reading of the Supreme Court's jurisprudence? Absolutely not. Obviously Congress cannot pass a statute that says any citizen who dislikes anything any agency does can bring a lawsuit and get judges to order them to do whatever they want. Marbury versus Madison. I remember that in law school. Congress can't create statutory standing. So it created the standing here, and you're defending that. So what makes this different than every other run-of-the-mill case? So what you have to look at is there are a couple phrases that predominate the Supreme Court precedent. Is this a generalized grievance, or is it a case where you are the object of the action? I believe that was the words from Lujan that Justice Scalia wrote. Are you the object of the action, or is this a generalized grievance? And so there was a good recent case, Summers versus Environmental Island, where there were two issues that the plaintiffs had. One was that there was a dispute. This was against the Forestry Service that was passing some regulations about burnt land. And there was one area of burnt land that was very close to one of the members of the plaintiff organization. And then there was a generalized dispute about this policy that the Forestry Service had about this type of land. Well, the government didn't even argue that on that first issue there was standing, because that member of that organization lived, or wanted to live, but wanted to go visit and observe the flora and fauna of that location. And because of that imminent desire to go visit that flora and fauna of that specific location, there was standing to challenge that Forestry Service regulation regarding that limited location. But the Forestry Service and that member settled the dispute, so it got removed. So then the Supreme Court said, well, now we're just left with only this generalized objection to the Forest Service's policy about these issues that you can't have standing for. So if we were to bring— Why isn't your position on that second point, you have a generalized objection to the fact that the PTO disagreed with you about the invalidity of this patent. It seems to me that you don't have a concrete and particularized injury that Lujan requires. So it's not a generalized agreement, because that means anybody could bring it. Any American could bring it. This is concrete and specific to us, because we're the only people, my client, is the only party in this entire planet that could bring this appeal. It's a concrete personal injury to them because they invested— That's kind of circular. You're saying that because you were permitted to appear at the PTO under a very general statute, that you now have injury on appeal just because you were permitted to appear there. But what I think—I mean, doesn't Lujan require something more than that? It requires a specific and particularized injury to you. Your Honor, the Aikens case, perfect example of exactly what you're talking about. And there they contrasted the facts in Aikens to a previous case called Robertson. Robertson— Remind me, is Aikens the FEC case or the FOIA case? Yes, Your Honor. It's the FEC case. But we also have the FOIA cases about getting President Obama's birth certificate. And we have the statements in Lujan. Even the majority admits that where there wouldn't be an injury, I wouldn't be able to bring a generalized grievance claim against the— But isn't the injury in the FEC case, the Aikens case, to a voter's rights? And a voter can trace misinformation or information about a candidate's funding or whatever the facts were there to his or her right to vote. Where is the link between your standing as what I think you describe as a taxpayer watchdog group and the PTO's decision disagreeing with you? How are you any different than a person off the street that went to the PTO and tried to get this patent invalidated? I agree that there is language in FEC v. Aikens which says these issues relate to the right as voters. But that's not the right which is the concrete injury. It was their request for information because that same desire for information, because I'm a voter, appeared in Richardson. Again, exactly. Aikens juxtaposes these two cases where you have the exact same voter wanting the exact same information from the exact same government. But in Aikens and the FOIA case, Congress has created a right to receive information. And if the information doesn't come forth, that right has been violated and therefore there's an injury. Now in this case, Congress has just said a third party can ask the patent office to do something, which you have and which they have. But beyond that, you have no right to receive any particular outcome, do you? I believe we do, Your Honor. We have a right to receive an outcome with which we are satisfied. No, the burden is on the patent office to either find it's patentable or not, that it's eligible or not. That's not your interest at all. I would disagree, Your Honor, because I would compare... Help me out. I would compare this scenario to the ex parte re-examination scenario where Congress did not create the right of third parties to continue to participate, did not create the right of third parties to appeal, said you're allowed to request it, you're allowed to respond to an initial response if the patentee makes one, but after that, no longer can the third party have any right to participate at the patent office or the courts. That's what this court found in Boeing and Syntex. In both cases, this court said, it's because there isn't a statutory right to continue to participate and then appeal that there's no standing there. That's exactly right after those cases is when Congress passed the inter parte re-examination rules that we exist under, although now they've been... Well, you said earlier, I think in response to Judge Hughes, that you were the only people that could bring this. Did you say that? We could only... Yes, Your Honor. We are the only party that could bring this appeal in this court. We're the only party who could have Article III standing to bring this dispute to this court. No one else could because we are the only party who requested this inter partes re-examination. Oh, because you requested it, but not necessarily because you're the only people that would have what you consider... Same in FOIA, same in Aikens. Anybody can request information from the government, but only the party who's requested it then has standing to an appeal and unsatisfactory response to the courts. Yeah, but that doesn't seem to answer the question of whether or not that's sufficient for Article III standing. Well, I think the... Because you're the only one. That seems sort of circuitous. In other words, once you bring... Anybody who can bring an administrative appeal is automatically entitled to Article III standing. It seems like that's the argument you're making, and I thought we had already disposed of that. No, you were asking me if I was making an absolute point that in all circumstances, Congress can create the right for anyone. And I said, no, I don't agree with that absolute point. But is that your position here, that just because Congress gave a right for you to appear at the PTO and then there's language about appeal, that that's sufficient for injury, or do you have something more on injury? I am, again, this is why I start off with my two pencils. Our dispute is not with WRF. I'm not going to say that WRF has threatened us. I don't really care who your dispute is. I want to know what your injury is. And is your injury simply the fact that you got an unfavorable decision from the PTO, or is it something more? Our injury was that we invested time. My client invested the time and the money to file the reexamination petition, as they're allowed to, to participate throughout the process. So under your view of the law, if some person off the street that had no connection with stem cell research or anything like that filed an inter-parties application at the PTO and was denied, they would have standing to appeal? Yes. How is that consistent with Lujan? Lujan says that you have to be injured. And it even says, Justice Scalia says, that Congress can create an injury where there wouldn't be one. Congress can give you the right to do something, the denial of which, the deprivation of which,  but did they give you a right to invalidate the patent? They gave you a right to appear. You fulfilled that right. You did appear. But did they give you a right to invalidate the patent? They gave us the right to seek a decision with which we are satisfied because of the statute. It gives us the right to appeal. That's the question I have. Is that really what they did? Did they say you have a right to get a particular outcome from the PTO? And failing that, you have an injury, which brings you to this court. Yes. That is my position. Where in the statute is that? I know that we raised this somewhat late in the game so that there wasn't a full briefing on this. But, you know, I don't see any discussion in the statute that intends that to be kind of a private attorney general kind of statute, which is where the courts tend to find standing. It seems much more like a general right to file at the PTO, but it doesn't say anything more than that. Your Honor, I'm just going to have to respectfully disagree. Section 141 expressly says, and we're talking the Section 141 that still applies to this case pre-AIA, a third-party requester in an inter partes reexamination who is in any reexamination proceeding is dissatisfied with the final decision in an appeal to the Board, may appeal the decision to the Federal Circuit. That is an express right to appeal if you're dissatisfied. Whereas the SPC cases and other cases require that you have to be an aggrieved party. Whether or not we are considered an aggrieved party may raise other issues. So dissatisfied, and kind of getting back to Judge Rader's point, that's the injury? Yes. Well, the combination of the right to file a reexamination and seek a decision with which you are satisfied, the denial of that is our injury, just like the denial of a FOIA request is the injury, the denial of information under the FCC case. There is another statute in the cases cited by my colleagues which uses the word adversely affected by. Now we're getting closer. Congress can decide which language it wants to use to create standing for these appeals. They wanted to say only a party adversely affected by, or only a party who requests inter-parties reexamination that would otherwise have declaratory judgment standing against the patent owner. They could do whatever they wanted. They said anyone who is dissatisfied can appeal. Can I just ask you to go back? We have a couple minutes left to a point I think you started with, which goes to who's the right party in this case and how should that be sorted out? I mean, this has come up in some of our other cases and it's not been resolved as to whether or not the caption should have been changed or the patent office should have been named as a party in this case. Do you have a view on that about how that works or how that should work? I have a very strong view, Your Honor. Thank you for asking. Article 2 does not allow the patent office to outsource the defense of the board's decision to a private party. That violates Article 2. That's exactly the issue that the Supreme Court dealt with in Perry, whereas we know the California referendum was not being defended by the California state and private citizens. Why didn't you move to reform the caption then? That's not our burden, Your Honor. If the patent office doesn't want to show up to defend its own board's decision, that's my job or my client's responsibility to make sure they show up to defend their opinion. They're not here. The patent office isn't here to defend their own decision. And are you saying that therefore by default you win? What are the consequences of that? I don't believe there's a default provision in the FRAP or the federal rules for the federal circuit like there is in the district court's circumstance, but I think the fact that they haven't shown up to defend their own decision should be taken quite strongly by the court. But your response, you know, we have the caption as it is, and you brought this case and presumably you're responsible for bringing the other side in here too, right? No, Your Honor. Under the federal circuit's Rule 15, we did exactly what we were required to do in filing our notice of appeal with the patent office. The patent office actually sent a letter to this court saying we're aware that this notice of appeal has been filed. We're sending you all the paperwork for this appeal. They then didn't file a notice of appeal. And all the other inter partes reexamination appeals Wait, you're not saying they should file a notice of appeal, you're saying I mean a notice of appearance. I'm sorry, I misspoke. They didn't file any notice of appearance here even though in every other case they filed a notice of appearance. In every other case they stood up and argued before If they were to file a notice of appearance, what does that do? Does that displace Wharf? Does Wharf then become an interested party? How does that work? No, Wharf would have the right to continue to participate in the matter as a co-appellee just like in the Placemark case and the other cases that we cite in our standing brief. I would like to reserve 20 seconds of rebuttal if I may, Your Honor. You know what? We'll give you three minutes back and give another three to Ms. Stoll if she needs it. May it please the court. We are in agreement with many of the questions asked today. The Lujan, Aikens What about the dissatisfaction point? They're dissatisfied. Doesn't that bring them under? Is that an injury? No, it's not. First of all, you've got to remember they had their day for the PTO. Five years of action from the PTO considering their request. That it was ultimately rejected doesn't give this court jurisdiction. The cases that we think are most helpful on that point in addition to the Supreme Court cases that were already mentioned are the Hydro Investors, Getman, and Nader cases. Yeah, we got that this morning. But can I go back to the point? Where would you draw the line then? Let's assume I'm a customer and I bought every version of Apple's phone. And then Samsung comes into the patent office and is trying to get a patent. Do I have the kind of injury potentially since I could be a potential defender and infringer on the patent that is issued for Apple? Where do we draw the line here between injury? Because is it parties that are competitors in the same market? Do they automatically have enough injury to satisfy the appeal procedures in the statute? Those are interesting questions. And I would say that for an end user where they actually could be sued for direct infringement, perhaps. Because the Supreme Court has said in some cases that a generalized interest, there can be a generalized interest so long as that individual has a definite and concrete interest. But I honestly don't know the answer to that because it's clearly not the facts here. What the facts are here is that they are not alleged. Can I ask a slightly different version of that hypothetical? Sure. What if instead of a consumer or somebody that had something like that, it was an association of science researchers at various universities that came in and said, we do research in this area and we want to be able to do stem cell research. And they filed it to PTO and lost. Do you think they would have standing? I would submit that a set forth in the record worth freely licenses its patent to academic researchers. So I would submit that. Well, that's not really my question though. I'm asking about standing. I'm trying like Judge Prost to get where you are on the line. I understand that Consumer Watchdog is kind of a general taxpayer advocacy group. At least that seems what they describe themselves as. Where in the continuum would you have to go to find standing? Is an association of stem cell researchers enough? Or would you require somebody that is a potential competitor? I would say that you would want to look at cases like Metamune to help you define that. You would have to look at those kinds of cases that talk about, for example, the case of controversy. Is the same standard? Are you telling us that we apply the same standard? I don't know that it's the same standard. In Metamune, they talked about standing requirements and said that the test they're applying for declaratory judgment jurisdiction is intended to satisfy the case or controversy requirement of Article 3. So you'd have to look to that standard. It's a concrete and personalized interest as well. It's a real controversy between the two parties. And here you're talking about a concrete and personalized interest. Well, if you're just two competitors, do you think just two competitors in the same market, that that would automatically confer standing? And if so, where's the particularized concrete injury there if there's no information as to whether or not you would ever actually infringe the patent that's at issue? If you look to Myriad for guidance on that, you would see that you'd need to have preparation by the requester and you'd have to have affirmative action by the patent owner. So you're saying just two competitors in the market. What does affirmative action by the patent owner mean? Like some sort of imminent threat of suit or some action to indicate that they're interested in inserting their patent. Certainly not freely licensing their patents to all academics. So even if you're two competitors in the same market and that's not sufficient? I would say that honestly, that is a question for another day. That is not the question here. I would say that no matter what, the party that's appealing to this court has to satisfy Article III standing and that the Interparties Re-Exam Statute doesn't provide that Article III standing by its own terms. Can I ask you a little bit about that? Suppose that Congress decided they wanted to let just an average person off the street to come in and challenge patents. They make findings that say for the good of the economy, for the good of the country as a whole, any person can file a claim at the PTO challenging a patent, and if they lose, if they're dissatisfied, they can appeal. I'm sure Congress doesn't come to that. I understand. But, I mean, essentially a private attorney general statute, somewhat like some of the other Supreme Court cases we've been talking about. If they enacted a statute like that, would that give individuals in those situations like consumer watchdog or just an average person off the street standing in this court? Perhaps. Wuhan, Justice Kennedy's concurrence, talks about that. Why don't we read the statute here as doing that? It doesn't say anything here. It's silent on standing. It's silent on what is required or what the injury would be to just somebody like consumer watchdog or a person off the street who decides they don't like patents or don't like a particular patent. It's enough of a leap where you're saying there's not enough. Standing can't be derived by just the fact that Congress creates a right of action and a right of appeal. We have to satisfy the Article III standing. But you're saying that that constitutional Article III standing can be derived by what Congress said. So if there's a purposes section at the start of the statute and Congress says, and we're giving this right to anyone because we think every citizen in this country who participates in the economy has an interest in the issuance of quality patents, that's okay? I'm not saying it's okay. I'm saying that somebody could argue that based on Justice Kennedy's concurrence in Lujan. But let me make it clear. The difficulty we have here, and I appreciate that this issue was late in coming and everybody promptly complied with our request for additional briefing, but we have to write the rules here. We can't write a standing case. It's hard for me to define how we could write a standing case that wouldn't have any implications whatsoever to anything other than these two parties here. And that's the problem we have, so we're asking for your help. I understand completely. Let me, if I can, further explain what I was trying to say because I don't want to be misunderstood. Okay. So Justice Kennedy, in his concurrence in Lujan, which was repeated by the majority in Massachusetts versus EPA, he said that in his view, Congress has the power to find injuries and articulate chains of causation, even where none existed before. Now, that's the part that Consumer Watchdog cites, but I want you to hear the rest of it because it's important. And what it says, in exercising this power, however, Congress must at the very least identify the injury it seeks to vindicate and relate the injury to the class of persons entitled to bring suit. And then he goes on and says, still, the party bringing suit must show that the action injures him in a concrete and personal way. I just think it's extremely difficult in any of these cases for Congress to override Article 3 standing. The party still has to show. Well, how is that shown in the Adkin case? That's the FEC case. The Adkin case, they actually didn't rely on the statute to find an injury in fact. They said that the statute shows that there's procedural standing, but they went on and said there's an injury in fact because this particular voter, had they known of the information, would have been able to vote with more knowledge. So there was an actual finding of injury in fact in that case. I know Consumer Watchdog's brief says otherwise, but if you read the case, it actually does find that there's an injury in fact. What if this re-exam had a stop of provision, which said you lose the right to go to court if you raised the issue? Would that loss of right be an injury that would allow you to appeal? I don't think so. This does have an estoppel provision, by the way. I don't think so. They have no, in fact, I think the estoppel provision supports the position that there's no standing here, and the reason why is because there's no threat here that they're going to have to even use that estoppel provision. In my view, the fact there's an estoppel provision shows that Congress understood that some 99 percent of the time, the folks who are bringing these inter-parties re-exams have a real concrete interest. They are competitors. They're parties that are involved in lawsuits against the patent owner. That's the vast majority of the use of this statute. Let me go to the first point we asked your friend about, which was where the patent office is in all of this. Let's assume that you had lost, which is just not what happened, obviously, but if you had lost, then you would clearly, and there's no dispute in your mind at least, that you would have the right to appeal. Yes. And would the case then be against the patent office or against Consumer Watchdog? I presume it would be against the patent office, right? Against the patent office, which would be defending the board's decision. So how would that have happened here? I mean, the patent office wasn't named. Would you have filed your appeal, and you would have filed an appeal against the patent office, or the patent office would have had to come in and, say, change the caption in this,  I think we changed the caption. I've been involved in a number of inter-parties re-examinations where a third-party requester bowed out in the course of the inter-parties re-exam, and that's exactly what happens. It becomes a case of the party versus Capos or whoever is the commissioner. And then would it be your view that, given your position that they lack Article III standing, that Consumer Watchdog could come in as an interested party in addition to the patent office, or that they would be precluded? I think that they'd have to show Article III standing. I think that they can go to an agency and seek certain relief without Article III standing, but once they walk into this courtroom, they have to have Article III standing. Again, we filed our Rule 28 letter on Friday. Sorry we didn't get it until this morning. We were trying to be helpful. And we would suggest that you look at the Hydro Investors, Getman, and Nader cases for the position that the denial of the relief at the agency cannot itself create the injury, in fact, required by Article III. And I would also submit that in response to the contention that Consumer Watchdog is the object of the board's decision, I would say that's incorrect. Worf's patent is the object of the board's decision. If the Court doesn't have any more questions. Thank you, Ms. Stoll. Thank you. Mr. Ravischer, you have at least three minutes. Thank you, Your Honor. I would just point, Your Honors, to page 578 of Lujan, the majority opinion. Nothing in this contradicts the principle that the injury required by Article III may exist solely by virtue of statutes creating legal rights, the invasion of which creates any. We had no legal right. What is your legal right here? I'm sorry. I think I'm repeating the chief's question from your last round. But do you have a right to just file and seek review, or do you have a right to get the patent invalidated? We have the right. So there are three statutes at play here. So three times Congress has spoken on this issue about what their intent and desire is, and three times the President signed these bills into law. 141 says dissatisfied. Any request, third-party requester who's dissatisfied for whatever reason. Is there anything beyond that where – I asked your opposing counsel, the hypothetical, if Congress had decided that it wanted members of the public to police the patent system because it was good for the economy and good for everybody and that, therefore, anybody could file a challenge to a patent. That seems like a much harder case. But is that the case presented by this statute, and is it all hinging on that word dissatisfied? I want to answer that question. I just want to point out the other two statutes because I don't use the word dissatisfied. 315 of the Patent Act says third-party requester may appeal any final decision favorable to the patentability of the claims. And 1295 of Section 28 gives this court jurisdiction to hear an appeal of a reexamination from any party who exercised that party's right to participate in the applicable board proceeding. So there are three different times here where Congress gave us the right. But, again, Marbury v. Madison, Congress cannot create standing by statute if it doesn't exist. Where is your injury in fact? Your Honor, I have to 100% respectfully disagree. The quote I just read you from Lujan says you're exactly wrong. If there's a right, and you haven't found us a right, though. No, it says here in Lujan a statute can create a legal right. Which, if violated, that right becomes the injury, in fact. But, again, I ask you, what is the injury you have suffered? And the injury we have suffered is our right to seek a decision from the patent. You've got a decision. You've got a chance to go there and seek a decision. Did you have a right to get a particular outcome with which we were satisfied? And to answer your question, Judge Hughes, let's assume two different statute Congress passes. Both of them say we want the public to be empowered to challenge patents. One statute says any member of the public can go to a district court and file a claim charging a patent is invalid. That would raise severe injury Article III standing issues because that would just be a right to go to court, like the declaratory judgment act, which still requires standing, metamune, all those cases I don't disagree with. But isn't that what happens in the FOIA cases? No. The FOIA cases first require a petition to the agency for the document. You can't run the court first. But then you go to a district court. So the distinction is gigantic here. That's what SEC Atkins is all about. Richardson was a taxpayer who wanted information to vote. So let me just see if it's clear because I sense that it seems like I don't mean to accuse you of anything, but you're going two different ways. Is it your position that when Congress creates an administrative right of action and allows an appeal to an appellate court or to a district court, for that matter, that losing at the administrative level alone is injury enough to confer Article III standing? That's my position. That was the position of this court in Boeing, in Syntex. It's the position of the Supreme Court in every case they cited. The additional cases they threw at you on Black Friday are all not precedential. They're not Supreme Court cases, and they have different statutes within CEWS, which include the aggrieved by language. I would just simply point out to you that looking back at the sentence that you were quoting in Lujan is followed by a sentence that you might want to take a look at that's a clarification kind of what their quote and worth is, but I think it's informative. I apologize. Thank you. Thank you, Mr. Ravischer and Ms. Stoll.